UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DAMONTE JONES,<br><br>        Plaintiff,<br><br>     v.<br><br>P.O. ALEXANDER REILLO, P.O. J. MALSCH, and the CITY OF MUNSTER,<br><br>        Defendants. | CAUSE NO.: 2:21-CV-142-TLS |

**OPINION AND ORDER**

This lawsuit stems from the February 22, 2020 arrest of the Plaintiff Damonte Jones by Defendants Alexander Reillo and J. Malsch, police officers with the Town of Munster,[1] during the course of a traffic stop for an obstructed license plate. *See* Am. Compl., ECF No. 18. The Plaintiff brings two federal constitutional claims under 42 U.S.C. § 1983, alleging claims of excessive force (Count I) and false arrest (Count II) against Officer Reillo and Officer Malsch, and brings an indemnification claim (Count III) against the Town of Munster. *Id.* This matter is now before the Court on the Defendants' Motion for Summary Judgment [ECF No. 43], which is fully briefed. Because there are genuine disputes of material fact for the jury, the Court denies the motion as to Counts I and II but dismisses the indemnification claim as unripe.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or

---

[1] Defendant Town of Munster is incorrectly named in the Amended Complaint as the City of Munster.

(2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citation omitted). In response, the non-movant "must make a sufficient showing on every element of his case on which he bears the burden of proof; if he fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citation omitted). A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted). Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the Court views the facts in the light most favorable to the Plaintiff, the non-movant, the Court also includes the material differences between the parties' versions of the events. *See Abbott v. Sangamon County*, 705 F.3d 706, 709 (7th Cir. 2013).

## MATERIAL FACTS[2]

On February 22, 2020, the Plaintiff attended his nephew's birthday party in Illinois with his friend Cameron Gardner. Pl. Ex. A, 6:19–7:10, 10:2–4, ECF No. 53-1; Pl. Ex. B, 6:16–7:6,

---

[2] The facts offered by the parties are considered only to the extent they are supported by the cited evidence of record. In addition, the Court denies the Plaintiff's motion to strike. *See* ECF No. 52, at 1–2. The Defendants failed to file a separate Statement of Material Facts with numbered paragraphs as required by N.D. Ind. L.R. 56-1(a)(3) (eff. Feb. 25, 2022), submitting instead a "Factual Background" that consists of four short paragraphs that cite two exhibits. Because the Plaintiff and the Court were able to identify the genuinely disputed facts on this straightforward record, the Court exercises its discretion to suspend the rule in this instance, *see* N.D. Ind. L.R. 56(1)(a), cmt. (2022).

ECF No. 53-2. The Plaintiff and Gardner left the party and began driving to the Plaintiff's brother's house in Schererville, Indiana. Pl. Ex. A, 7:1–10. Needing to use the restroom, the Plaintiff exited the highway and pulled into a Burger King parking lot. Pl. Ex. A, 8:14–16; Pl. Ex. B, 7:14–21.

Officer Reillo, a Munster Police Officer patrolling in the Town of Munster, states that he was exiting a gas station parking lot when he observed the Plaintiff's vehicle traveling on Calumet Avenue with an obstructed license plate. Def. Ex. 1, Interrog. Ans. No. 5, ECF No. 45-1.[3] In contrast, the Plaintiff states that, prior to driving, he observed that there was nothing covering or otherwise obstructing the license plate of the vehicle. Pl. Ex. F, ECF No. 53-6.[4]

Officer Reillo turned on his emergency lights to initiate a traffic stop of the Plaintiff's vehicle. Def. Ex. 1, Interrog. Ans. No. 5. The Plaintiff did not notice any police lights prior to pulling into the Burger King parking lot, parking, or exiting his vehicle. Pl. Ex. A, 7:15–22. Gardner testified that the Plaintiff was almost to the door of the restaurant when the police pulled in and turned on their lights. Pl. Ex. B, 7:22–25.

As the Plaintiff was walking to the Burger King entrance, Officer Reillo instructed the Plaintiff to return to his vehicle. Pl. Ex. A, 7:21–25; Def. Ex. 1, Interrog. Ans. No. 5. The Plaintiff testified that he stopped when instructed. Pl. Ex. A, 7:24–25. In contrast, Officer Reillo states that the Plaintiff said, "No." Def. Ex. 1, Interrog. Ans. No. 5. Officer Reillo told the Plaintiff that he was being stopped for a traffic violation. *Id.* Officer Reillo states that the

---

[3] The Defendants' brief asserts that "Officer Reillo observed a vehicle traveling on Calumet Avenue *with a license plate frame that obstructed the license plate*." ECF No. 44, at 1 (emphasis added). However, the detail of a "license plate frame" is not supported by the cited evidence of record. *See* Def. Ex. 1, Interrog. Ans. No. 5.

[4] Although the Defendants argue that the Plaintiff's affidavit is self-serving and contradicts the Plaintiff's deposition testimony, the Defendants do not object to the admissibility of the affidavit based on any failure to comply with the requirements of an affidavit, *see Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985), or a declaration, *see* 28 U.S.C. § 1746. *See Baines v. Walgreen Co.*, 863 F.3d 656, 662 (7th Cir. 2017) ("Evidence offered at summary judgment must be admissible to the same extent as at trial, *at least if the opposing party objects* . . . ." (emphasis added)).

3

Plaintiff continued to walk to the entrance of the Burger King and stated, "[Y]ou can't stop me in a parking lot." *Id.*

The parties' versions of the events continue to differ. Officer Reillo states that he asked the Plaintiff for his drivers' license, but the Plaintiff refused to produce it. *Id.* Officer Reillo warned the Plaintiff that if he refused to produce his driver's license and cooperate, he would be placed in handcuffs. *Id.* In contrast, the Plaintiff testified, and Gardner corroborated, that Officer Reillo asked the Plaintiff if he had a driver's license, the Plaintiff answered yes, and then Officer Reillo handcuffed him. Pl. Ex. A, 7:25–8:4, 9:8–10; Pl. Ex. B, 7:22–8:8.

Officer Malsch then arrived on scene, exited his vehicle, and assisted Officer Reillo in placing the Plaintiff in handcuffs. Def. Ex. 2, Interrog. Ans. No. 6, ECF No. 45-2; Pl. Ex. D, 19:21–20:25, 34:13–17, ECF No. 53-4. Officer Malsch did not see the Plaintiff's license plate. Pl. Ex. D, 17:23–18:7.

The parties' versions of the events again differ. The Plaintiff and Gardner testified that, after handcuffing the Plaintiff, Officer Reillo started pulling the Plaintiff toward the Plaintiff's vehicle and then slammed him to the ground. Pl. Ex. A, 8:7–12; Pl. Ex. B, 11:2–10. Gardner testified that the Plaintiff was not resisting when he was taken to the ground. Pl. Ex. B, 16:2–6. Once on the ground, the officers rolled the Plaintiff over and searched his person, pulled out his wallet, and saw his driver's license. Pl. Ex. A, 9:14–17. The Plaintiff testified that the officers did not tell him why they stopped him until after they slammed him to the ground. *Id.* at 10:18–21. The Plaintiff also testified that, throughout their interactions, the Plaintiff obeyed the officers' instructions and was not argumentative. Pl. Ex. A, 11:4–7, 18–24.

In contrast, the officers state that, when Officer Reillo attempted to place the Plaintiff in handcuffs, the Plaintiff pulled his right arm away. Def. Ex. 1, Interrog. Ans. No. 5; Def, Ex. 2,

4

Interrog. Ans. No. 8. They also state that, after Officer Reillo placed the Plaintiff in handcuffs, he instructed the Plaintiff to walk back to the Plaintiff's vehicle, at which time the Plaintiff pulled away from the officers. Def. Ex. 1, Interrog. Ans. No. 5; Def. Ex. 2, Interrog. Ans. No. 8. Fearing that the Plaintiff was attempting to escape, Officer Reillo pulled the Plaintiff to the ground and instructed him to stop resisting. Def. Ex. 1, Interrog. Ans. No. 5.

The Plaintiff was charged with resisting arrest. *Id.* at Interrog. Ans. No. 9.

## ANALYSIS

Section 1983 provides, in pertinent part, that "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. To prevail on a § 1983 claim, a plaintiff must show that the defendant deprived him of a federal constitutional right and that the defendant acted under color of state law. *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). The Plaintiff's false arrest and excessive force claims are brought under the Fourth Amendment to the United States Constitution. The Defendants seek summary judgment on both constitutional claims as well as the indemnification claim. The Court considers each claim in turn.

**A.   False Arrest**

In his Amended Complaint, the Plaintiff alleges that he was not committing any crimes or breaking any laws when Officer Reillo stopped his vehicle and the officers took him into custody. Am. Compl. ¶¶ 5–11. He further alleges that there are no facts to support probable cause for his arrest and that the charges of resisting law enforcement were false. *Id.* at Count II, ¶¶ 17–19. The Defendants move for summary judgment on the false arrest claim, arguing that the officers' narrative establishes there was probable cause for the stop and the arrest.

The Plaintiff responds that his false arrest claim must survive because there is a dispute of fact about whether his license plate was, in fact, obstructed at the time of the stop. "When a police officer reasonably believes that a driver has committed a minor traffic offense, probable cause supports the stop." *Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016) (quoting *Jones v. City of Elkhart*, 737 F.3d 1107, 1114 (7th Cir. 2013)). Moreover, "it is not a violation of the Fourth Amendment to arrest an individual for even a very minor traffic offense." *Id.* (citations and internal quotation marks omitted). In Indiana, driving with a license plate "obstructed or obscured by . . . accessories or other opaque objects" is a Class C infraction. Ind. Code § 9-18.1-4-4(b), (e). In his interrogatory response, Officer Reillo states that he conducted the traffic stop based on an obstructed license plate on the Plaintiff's vehicle. In contrast, the Plaintiff states in his affidavit that, prior to driving his car, he observed that there was nothing covering or otherwise obstructing the license plate on his vehicle. Thus, there is a genuine dispute of fact about whether the Plaintiff's license plate was obstructed and, as a result, whether it was objectively reasonable for Officer Reillo to conduct the traffic stop.

The Defendants make several arguments that the Plaintiff's affidavit is insufficient to create a dispute of fact regarding the traffic stop, none of which are persuasive. First, they contend that the "Plaintiff has previously claimed he was unaware of why he was stopped," citing Paragraph 7 of the Amended Complaint. ECF No. 55, Ans. ¶ 3. However, Paragraph 7 of the Amended Complaint alleges only, "The Plaintiff was not committing any crime or breaking any laws." Am. Compl. ¶ 7. This allegation is consistent with the Plaintiff's affidavit statement that he looked at his vehicle before driving and did not see any obstruction of his license plate.

Similarly, the Defendants contend that the Amended Complaint alleges that the "Plaintiff states that he was never told why he was initially stopped," citing Paragraph 9 of the Amended

complaint. ECF No. 54, at 3. However, Paragraph 9 alleges only that, during the traffic stop, "[t]he Plaintiff questioned why he was being stopped." Am. Compl. ¶ 9. This allegation is also consistent with his affidavit statement.

Next, the Defendants note the Plaintiff's testimony that Officer Reillo told the Plaintiff he was stopped for an obstructed plate and argue that the Plaintiff's subsequent affidavit statement is inconsistent with this deposition testimony. ECF No. 55, Ans. ¶ 3 (citing Pl. Ex. A, 10:18–21); ECF No. 54, at 3 (same). In his affidavit, the Plaintiff stated that he looked at his car before driving and did not observe obstructed plates. The Plaintiffs statements are not inconsistent because he does not dispute that Officer Reillo's *stated reason* for the stop is an obstructed license plate; the Plaintiff disputes that his license plate was in fact obstructed.

The Defendants also contend that the Plaintiff's affidavit statement is self-serving and, therefore, carries no weight. However, a self-serving affidavit may preclude summary judgment if the statement is based on personal knowledge and sets forth specific facts. *See Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003); *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004). Here, the Plaintiff's affidavit states that it is based on personal knowledge, the Plaintiff has personal knowledge of his own action of looking at his car prior to driving, and the statement sets forth the specific fact that he did not observe any obstruction of the license plate.

Finally, the Defendants fault the Plaintiff for not giving more detail in response to summary judgment on the issue of the license plate. However, it is the Defendants' burden on summary judgment to show that there is no dispute of any material fact. *See* Fed. R. Civ. P. 56(a). Here, they cite only Officer Reillo's Interrogatory Response No. 5 in which he states, "I observed a silver vehicle pass my location with an obstructed license plate." Def. Ex. 1, Interrog. Ans. No. 5. The Defendants offer no further detail from Officer Reillo as to how the license plate

7

was obstructed or what specifically he observed. Officer Malsch testified that he did not see the Plaintiff's license plate. The Defendants do not cite any other evidence of record regarding how the license plate was obstructed. Notably, neither party has identified any part of the Plaintiff's deposition in which he was asked about the license plate.

The Plaintiff's affidavit statement that he did not observe any obstruction of his license plate contradicts Officer Reillo's statement that the vehicle had an obstructed license plate. *See Payne*, 337 F.3d at 773 ("Where the material facts specifically averred by one party contradict the facts averred by a party moving for summary judgment, the motion must be denied."). This creates a genuine dispute of fact for trial as to whether the traffic stop for an obstructed license plate was objectively reasonable. *Cf. Williams*, 809 F.3d at 942–43 (finding that the plaintiff had not created a genuine dispute of fact for trial when the officer testified that he observed the plaintiff fail to signal before changing lanes and the plaintiff did not testify that he used his signal but rather testified that he did not remember whether he had); *Jones*, 737 F.3d at 1114–15 (finding that the plaintiff's assertion that he does not usually speed was insufficient to overcome the officer's testimony based on his observations that the plaintiff's car was swerving and his radar gun indicating that the plaintiff was speeding). Accordingly, the Court denies the motion for summary judgment on the Plaintiff's Fourth Amendment false arrest claim in Count II.

**B.     Excessive Force**

The Fourth Amendment right to be free from excessive force is governed by the objective reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 388 (1989). "An officer who has the right to arrest an individual also has the right to use some degree of physical force or threat of force to effectuate the arrest, . . . circumscribed by the Fourth Amendment's insistence on reasonableness." *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009) (citing *Graham*, 490

U.S. at 396). "An officer's use of force is unreasonable if, judging from the totality of the circumstances at the time of the arrest, the officer uses greater force than was reasonably necessary to effectuate the arrest." *Gupta v. Melloh*, 19 F.4th 990, 996 (7th Cir. 2021) (quoting *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519 (7th Cir. 2012)). The totality of the circumstances considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Turner v. City of Champaign*, 979 F.3d 563, 567 (7th Cir. 2020) (quoting *Graham*, 490 U.S. at 396).

"[P]olice officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397. Thus, the reasonableness of the use of force must consider the facts "from the perspective of the reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (internal quotation marks and citation omitted)). Importantly, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citation omitted).

In their motion for summary judgment, the Defendants contend the facts show that the Plaintiff exited his vehicle during the traffic stop while Officer Reillo was away from his patrol vehicle; refused several commands to get back into his vehicle; resisted giving Officer Reillo his license so that a proper identification could be completed; and pulled his right arm away while being handcuffed and pulled away from the officers while being walked to his car, creating a safety concern. Thus, the Defendants argue the officers had probable cause to believe that the

Plaintiff was actively resisting arrest and that taking the Plaintiff to the ground was a reasonable use of force justified by the Plaintiff's actions.

However, the Plaintiff's testimony and that of his passenger, Gardner, raise a genuine dispute of material fact as to the reasonableness of the force used based on the parties' dispute over the events that led Officer Reillo to "slam" the Plaintiff to the ground. As an initial point, the Plaintiff notes that Officer Reillo stopped him for a minor equipment violation, which should weigh against the use of force. The Plaintiff argues that he did not present a threat, much less an immediate threat, to Officer Reillo or anyone else in the vicinity. He notes that there is no evidence that Officer Reillo suspected the Plaintiff of being armed, that the Plaintiff was intoxicated or that Officer Reillo suspected him of being intoxicated, or that the Plaintiff physically or verbally threatened Officer Reillo or Officer Malsch. Finally, the Plaintiff testified, corroborated by Gardner, that he answered Officer Reillo's questions when asked and did not physically resist the officers.

Thus, there is a factual dispute as to whether the Plaintiff was uncooperative and resisting prior to Officer Reillo slamming him to the ground. Under the totality of the circumstances, when the facts are viewed in the light most favorable to the Plaintiff, a jury could determine that the Plaintiff being slammed to the ground was an unreasonable use of force. Accordingly, the Court denies the motion for summary judgment on the Fourth Amendment excessive force claim in Count I.

## C. Indemnification

In Count III, the Plaintiff brings a state law claim for indemnification, alleging that Indiana law requires public entities to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities. *See* Ind. Code § 34-

13-4-1. The Defendants argue this claim is premature because a duty to indemnify is not ripe until liability has been established. The Plaintiff offers no response. "[D]ecisions about indemnity should be postponed until the underlying liability has been established." *Lear Corp v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003). Because the claims on which the Plaintiff seeks indemnification—the constitutional claims in Counts I and II against the officers—have not yet been resolved, the Court grants the motion and dismisses without prejudice the indemnification claim against the Town of Munster in Count III as unripe. *See Sowell v. Dominguez*, No. 2:09-CV-47, 2011 WL 294758, at *14 (N.D. Ind. Jan. 26, 2011).

**D.**     **Rule 11**

In his response brief, the Plaintiff asks the Court to impose sanctions under Federal Rule of Civil Procedure 11(c) on the Defendants and/or defense counsel for bringing a frivolous motion for summary judgment. However, the Plaintiff's request fails to meet two requirements of Rule 11: (1) the request for sanctions was not filed as a separate motion and (2) there is no evidence of compliance with the safe harbor provision, which requires that the Defendants be given twenty-one days' notice within which to withdraw the motion before the filing of a Rule 11 motion for sanctions with the Court. *See* Fed. R. Civ. P. 11(c)(2); *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1058 (7th Cir. 1998). Accordingly, the Court denies the request for an award of Rule 11 sanctions.

## CONCLUSION

For the reasons set forth above, the Court hereby GRANTS in part and DENIES in part the Defendants' Motion for Summary Judgment [ECF No. 43], denying the motion as to the Plaintiff's claims of excessive force (Count I) and false arrest (Count II) against Defendants Reillo and Malsch and granting the request to dismiss without prejudice the indemnification

claim (Count III) against Defendant City of Munster. As a result, the Court ORDERS that the Plaintiff's Complaint is DISMISSED without prejudice against Defendant City of Munster only. The case remains pending against Defendants Reillo and Malsch.

The Court further ORDERS that the Plaintiff's Motion to Disqualify and Bar Defendants' Expert [ECF No. 32] is denied without prejudice and grants the Plaintiff leave to seek reinstatement of the motion in accordance with the Court's trial scheduling order.

This matter will be set for a scheduling conference by separate order.

SO ORDERED on March 30, 2023.

                                            s/ Theresa L. Springmann
                                           JUDGE THERESA L. SPRINGMANN
                                           UNITED STATES DISTRICT COURT